**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**MONTBLANC-SIMPLO GMBH, et al.,**

                         **Plaintiffs,**

        **-against-**

**COLIBRI CORPORATION, et al.,**

                        **Defendants.**
-----------------------------------------------------------x

                                **REPORT AND**
                                **RECOMMENDATION**

                                **07-CV-5422 (KAM) (RLM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Plaintiffs Montblanc-Simplo GmbH ("Montblanc-Simplo"), Montblanc North

America, LLC ("Montblanc N.A."), Cartier International, N.V. ("Cartier"), and Panerai,

division of Richemont, N.A., Inc. ("Panerai") (collectively, "plaintiffs"), brought suit against

defendants Colibri Corporation and the Colibri Group, Inc. (collectively "defendant" or

"Colibri") for trademark, trade dress, and copyright infringement.  Plaintiffs allege that

defendant manufactured, offered for sale, sold, and distributed items bearing the trade dress or

copyrighted designs of their Starwalker and Panerai Luminor product lines.  Compl. ¶ 33.  On

July 8, 2008, the undersigned magistrate judge referred the case for mediation, <u>see</u> Order

Referring Case for Mediation, Docket Entry ("D.E.") #10, which was scheduled to occur on

March 4, 2009.  <u>See</u> Joint Status Report, D.E. #22.  Prior to the scheduled mediation date,

counsel for both parties informed this Court that Colibri had closed down, released its

employees, and, by order of the Superior Court of Rhode Island, been placed into involuntary

receivership.  <u>See</u> 1/21/09 Def. Letter, D.E. #23; 2/3/09 Pl. Letter, D.E. #24; 2/6/09 Letter

on behalf of Allan M. Shine, Receiver of Colibri Group ("2/6/09 Receiver's Letter"), D.E.

#26; 3/31/09 Letter on behalf of Allan M. Shine, Receiver of Colibri Corporation ("3/31/09

Receiver's Letter"), D.E. #31.

After the Colibri receiver failed to comply with this Court's order directing him to either respond to plaintiffs' discovery demands or notify the Court that he either would not be defending the case or had reached an agreement in principle to settle the case, <u>see</u> 2/12/09 Endorsed Order, D.E. #28, plaintiffs moved for entry of default as a sanction pursuant to Rule 37 of the Federal Rules of Civil Procedure.  <u>See</u> 3/3/09 Pl. Mot., D.E. #29.  The receiver and plaintiffs attempted without success to resolve the matter, <u>see</u> <u>generally</u> 4/2/09 Endorsed Order, D.E. #31, resulting in a motion by plaintiffs for default judgment, <u>see</u> 4/17/09 Pl. Mot., and an order by the Honorable Kiyo A. Matsumoto referring the matter to the undersigned magistrate judge for a Report and Recommendation.  <u>See</u> 10/26/09 Docket Entry. On November 17, 2009, the receiver confirmed by letter that he was not authorized to participate further in the litigation.  <u>See</u> 11/17/09 Receiver's Letter, D.E. #36.

For the reasons that follow, this Court respectfully recommends that a default judgment be entered against defendant on certain aspects of plaintiffs' trade dress claims, and that defendant be permanently enjoined from infringing plaintiffs' Skywalker Pen and Panerai Luminor trade dresses as outlined below.

## FACTUAL BACKGROUND

 Plaintiffs Montblanc-Simplo and Montblanc NA are sister corporations with the same corporate parent, the former of which is located in Germany, and the latter in the United States.  Compl. ¶¶ 2, 3.  Montblanc NA is the exclusive licensee and distributor in the United States for Montblanc brand writing instruments and related products, all of which are designed, manufactured, and packaged by its German counterpart, Montblanc-Simplo.  <u>Id</u>.

Montblanc-Simplo owns a United States trademark in the Starwalker Pen Design.  See U.S. TM Reg. No. 3,659,753, D.E. #35-1.   The Starwalker trade dress consists of a combination of elements that "together give the pens a distinct overall look and commercial impression."  Compl. ¶ 10.  These include: (1) a body with a primarily uniform radius that bulges out in its lower portion and then tapers down to a point; (2) a translucent rounded dome at the top of the pen; (3) a grid design along the body that consists of small black rectangular areas with steel-colored edges, with the long edges of the rectangular areas laid along the length of the pen; and (4) at the midpoint of the length of the lower bulging portion of the pen, a "triple-band design in steel-colored metal" around the pen's circumference, with a middle band thicker than those bands above and below it.  Id.  Plaintiffs claim that the Montblanc brand and its various trademarks have become "famous symbols of quality and luxury" around the globe, id. ¶ 9, and that the "public has come to recognize [the Starwalker trade dress] as distinctive of this line of Montblanc pens" and as indicative of the source of such pens.  Id. ¶ 11.

Plaintiff Cartier is a Netherlands corporation that also owns trademarks and the trade dress for a luxury line of products.  See Compl. ¶¶ 4, 22, 23.  These include designs for watches that are licensed to Panerai for distribution in the United States under the "Panerai" brand name.  Id.

Of relevance to plaintiffs' claims here is the trade dress for the "Panerai Luminor" line of watches, certain aspects of which have been registered as a trademark at the United States Patent and Trademark Office.  See Compl. ¶ 27; U.S. TM Reg. No. 3,178,943, D.E. #35-1. The necessary elements include: (1) a large watch case, at least 38 millimeters in diameter, that

is thicker than most watches and cushion-shaped, with a round frame that encompasses a watch dial surrounded by a square portion having bowed-out sides and rounded corners, each of which slopes downward, with the lowest point of the case being at the corner; (2) a round bezel, beveled such that it slopes downward from the inside to the outside of the case, surrounding the dial and proximate to the edge of the case at the 3, 6, 9, and 12 o'clock positions, enhancing the effect of the lowering of the four corners of the case; (3) two pairs of thick, downwardly sloping extensions used to hold the watch strap; (4) a dial with oversized numerals and/or markers at the hour positions around the watch; (5) baton-shaped, luminescent hands; (6) an oversized round winding crown with tooth-like striations; and (7) a bridge that extends over the winding crown reaching above and below. See Compl. ¶ 24. Cartier also owns a separate, additional trademark for the Panerai Luminor (winding crown) bridge design itself. See U.S. TM Reg. No. 2,323,571, D.E. #35-1.

Plaintiffs allege that the Colibri defendants, headquartered in Rhode Island, "manufactured, sold, offered for sale and distributed pens, pocket watches, and other accessories" bearing one or more of the Starwalker or Panerai trade dress or copyrighted designs without a license or authorization from plaintiffs. Compl. ¶¶ 33, 34. Specifically, plaintiffs allege that Colibri "affixed, applied, or used in connection with the sale of its goods, false descriptions and representations, which tend[ed to] falsely . . . describe or represent that the goods and services offered" were somehow duly authorized and licensed by plaintiffs. Id. ¶ 37. These products presented as "colorable imitations" of the Starwalker and Panerai trade dresses, id., and included jewelry evocative of the Starwalker pen, 11/18/09 Pl. Letter Br. at 2, D.E. #35, and watches with the distinctive marks of the Panerai Luminor trade dress owned

by plaintiffs.  See Compl. ¶ 42.  Upon this basis, plaintiffs allege that Colibri infringed upon

their trademark and trade dress rights in violation of the Lanham Act and common law, and

infringed plaintiffs' copyrights.

## DISCUSSION

**I.  Default Judgment as a Sanction Under Rule 37**[1]

Pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, "[i]f a party or a

party's officer, director, or managing agent . . . fails to obey an order to provide or permit

discovery, . . . the court where the action is pending may issue further just orders.  They may

include the following:  . . . (iii) striking pleadings in whole or in part; [and/or] (vi) rendering a

default judgment against the disobedient party . . . ."  FED. R. CIV. P. 37(b)(2); see also FED.

R. CIV. P. 37(c), (d).

Culpability or intent is a primary concern under Rule 37, which does not authorize a

sanction terminating the case where the "failure to comply [with a pretrial production order]

has been due to inability, and not to willfulness, bad faith, or any fault" on the part of the

party against whom sanctions are sought.  Societe Int'l v. Rogers, 357 U.S. 197, 212 (1958).

On the other hand, the entry of a default judgment as a sanction is appropriate in the face of

willful misconduct, "to achieve the purpose of Rule 37 as a credible deterrent 'rather than a

---

[1]  Typically, entry of a default judgment occurs under Rule 55(b) of the Federal Rules of Civil
Procedure, and is described as a two-step process, of which the first step is obtaining the
clerk's entry of default.  See Am. Alliance Co. v Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir.
1996); see also New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).  However, where a
"party, or a party's representative, has appeared in an action and later defaults, Rule 55(b)(2)
requires that the court, rather than the clerk, enter the judgment by default."  10A Wright,
Miller & Kane, Federal Practice and Procedure: Civil 3d § 2686, at 41 (1998); see Fed. R.
Civ. P. 55(b)(2).

paper tiger.'" Update Art Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 70-71 (2d Cir. 1988) (upholding judgment entered under Rule 37 in plaintiff's favor on copyright claims where defendants acted in bad faith and refused to comply with discovery orders) (quoting Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1064 (2d Cir. 1979)). While dispositive relief is a severe sanction that should be granted only sparingly, a "continuing saga of dilatory conduct" will satisfy the threshold for entering a default judgment under Rule 37. U.S. Freight Co. v. Penn Cent. Transp. Co., 716 F.2d 954, 955 (2d Cir. 1983). "Here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Sieck v. Russo, 869 F.2d 131, 134 (2d Cir. 1989) (citation omitted).

Ultimately, the imposition of litigation-ending sanctions under Rule 37 is a matter of judicial discretion. See Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 640 (1976) (upholding dismissal of the complaint as a sanction where "the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents."). The three primary factors that typically inform that exercise of discretion are: (1) the defendant's fault or willfulness; (2) the adequacy of notice; and (3) the efficacy of lesser sanctions. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852 (2d Cir. 1995). Measured against these standards, Colibri's course of conduct warrants entry of a default judgment.

With respect to fault and willfulness, defendant not only declined to participate in

discovery, but, through Colibri's appointed receiver (Allan M. Shine), affirmatively represented to the Court that Colibri would not pursue further defense of this action. In a letter dated November 17, 2009, Mr. Shine stated that he had not been authorized to participate in this litigation, and that he would not file a response to plaintiffs' letter-brief in support of their motion for default judgment. See 11/17/09 Receiver's Letter, D.E. #36. Though the receiver assured the Court that his continued silence with regard to discovery and other pretrial matters should not be "construed as disrespectful" to the Court, see id., a wholesale refusal to provide discovery or otherwise litigate the matter demonstrates that defendant has "willfully opted not to continue to defend this action, which warrants the sanction of default." Microsoft Corp. v. Computer Care Center, Inc., No. 06-CV-1429 (SLT)(RLM), 2008 WL 4179653, at *5 (E.D.N.Y. Sept. 10, 2008) (citing MCI Worldcom Commc'ns, Inc. v. Gamma Commc'ns Group, Inc., 204 F.R.D. 259, 262 (S.D.N.Y. 2001)).

With respect to the adequacy of notice, Colibri, through its receiver, has acknowledged its awareness that its failure to respond to plaintiffs' discovery requests could result in a default judgment. See 3/31/09 Receiver's Letter, D.E. #31; see also 4/1/09 Endorsed Order, D.E. #32. Thus, imposing sanctions against defendant -- even those as severe as entry of default -- will cause no unfair surprise. See Update Art, 843 F.2d at 72.

Finally, as demonstrated by analogous cases in which default judgments were entered, lesser sanctions are not appropriate here. See, e.g., MCI Worldcom Commc'ns, 204 F.R.D. at 262 ("While the court has many possible sanctions at its disposal, the fact that defendants have failed to respond in any way to this court's orders or discovery requests indicates the ultimate sanction—striking of the Answer and entry of a default judgment—is an appropriate

sanction."); <u>Computer Care</u>, 2008 WL 4179653, at *6 (where defendants "willfully abandoned their defense of [the] case[,] . . . . [l]ess harsh sanctions, such as orders compelling defendants to participate, have already proven fruitless."); <u>see also</u> <u>Update Art</u>, 843 F.2d at 73 ; <u>accord</u> <u>El-Yafi v. 360 East 72nd Owners Corp.</u>, 164 F.R.D. 12, 17 (S.D.N.Y. 1995) ("Although entry of a default judgment for violation of a discovery order is an extreme sanction, it has long been recognized as appropriate where the failure is willful and the discovery sought is material to the adverse party."). Indeed, "[i]n this circuit, courts have dismissed actions where only one discovery order is violated or where a party has demonstrated willful disrespect for discovery obligations." <u>Altschuler v. Samsonite Corp.</u>, 109 F.R.D. 353, 357 (E.D.N.Y. 1986) (citations omitted) (third-party complaint dismissed and default judgment entered against defendant for failing to produce documents, respond to interrogatories or comply with discovery order).

Here, Colibri has -- in no uncertain terms -- willfully and expressly abandoned its defense of this case. Less harsh sanctions would clearly prove fruitless at this stage. Under these circumstances, the appropriate sanction is one that resolves the action by entering a default judgment pursuant to Rule 37. <u>See</u> <u>Computer Care</u>, 2008 WL 4179653, at *6.

## II. Liability

Where, as here, the defendant has defaulted, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>Geddes v. United Fin.</u> <u>Group</u>, 559 F.2d 557, 560 (9th Cir. 1977) (citing <u>Pope v. United States</u>, 323 U.S. 1, 12 (1944)); <u>see</u> <u>Flaks v. Koegel</u>, 504 F.2d 702, 707 (2d Cir. 1974). In other words, a party's default is almost universally deemed an admission of the plaintiff's well-pleaded allegations of

fact pertaining to liability.  See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006); In re Crazy Eddie Secs. Litig., 948 F.Supp. 1154, 1160 (E.D.N.Y. 1996).  This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend.  See Bambu Sales, 58 F.3d at 854 (liability established through a default judgment entered as a Rule 37 sanction); Jacobson v. Artemis Elec. Servs., Inc., No. 04-CV-2567 (ARR)(WP), 2007 WL 3232514, at *2-3 (E.D.N.Y. Nov. 1, 2007) (default judgment entered after corporate defendant failed to retain counsel); see generally Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (following a Rule 55 default for failure to plead or otherwise defend, the court accepts as true all of the factual allegations of the complaint, except those relating to damages).

Nevertheless, a plaintiff seeking entry of a default judgment must set forth facts sufficient to state a legitimate cause of action.  See Chanel, Inc. v. Schwartz, No. 06-CV-3371 (BMC)(JO), 2007 WL 4180615, at *3 (E.D.N.Y. Nov. 19, 2007); Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., No. 04-CV-2985 (SMG), 2007 WL 201167, at *1 (E.D.N.Y. Jan. 23, 2007); see also 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2688, at 63 (1998) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").  A sufficient pleading in federal court consists of "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2).  This rule requires more than a "formulaic recitation of the elements of a cause of action," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted); rather, the pleading must contain "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citation omitted). If the facts are thus well pleaded, the court assumes their veracity and determines whether such allegations "plausibly give rise to an entitlement to relief." Id. at 1950.

Plaintiffs here purport to advance "three basic claims": (1) copyright and trade dress claims concerning the Montblanc Starwalker Pen Design; (2) copyright claims concerning a line of jewelry that is evocative of the Starwalker Pen; and (3) a trade dress claim concerning the design of the Panerai Luminor Watch Design. See 11/18/09 Pl. Letter Br. at 2, D.E. #35.[2] These claims are essentially of two kinds—trade dress and copyright—and this Court will, in turn, address the sufficiency of plaintiffs' pleadings as to both.

**A. Trade Dress Claims**

Plaintiff's trade dress claims are brought under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "which functions as a federal law of unfair competition . . . and extends protection to a product's 'trade dress.'" Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 31 (2d Cir. 1995) (quotation and citation omitted). The term "trade dress" is not limited to the product's packaging, but rather encompasses "the design or configuration of the product itself." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 114 (2d Cir. 2001).

A plaintiff asserting trade dress rights in the design of a product registered on the

---

[2] Plaintiffs' motion papers provide a narrower description of plaintiffs' claims than does their complaint; for example, the motion papers do not allege *trademark* infringement, and, in discussing trade *dress* infringement, abandon the complaint's suggestion that plaintiffs had a protectible trade dress in Starwalker products other than the Starwalker Pen. Compare 11/18/09 Pl. Letter Br. at 2, D.E. #35, with Compl. ¶ 37; id. ad damnum clause ¶ III(a). Unless otherwise noted, this opinion analyzes only those claims that plaintiffs pursue in their motion papers.

principal register must also allege and establish (1) that the claimed trade dress is distinctive; and (2) that there is a likelihood of confusion between its product and the defendant's product. See id. at 115; R.F.M.A.S. Inc. v. So, 619 F.Supp.2d 39, 75 (S.D.N.Y. 2009). There is no trade dress protection for matter that is functional. See Malaco Leaf, AB v. Promotion in Motion, Inc., 287 F.Supp.2d 355, 365–66 (S.D.N.Y. 2003); R.F.M.A.S., 619 F.Supp.2d at 75.

Where, as here, the plaintiff seeks to define a trade dress based on the overall appearance of a product design, the Court must focus on the combination of elements in the trade dress, even though "each element of a trade dress individually might not be inherently distinctive[.]" Jeffrey Milstein, 58 F.3d at 32. Nevertheless, "a trade dress based on product design [alone] can never be inherently distinctive," and plaintiff must assert some acquired distinctiveness or secondary meaning in order to receive protection. Malaco Leaf, 287 F.Supp.2d at 363 (citing Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 212–15 (2000)); see also Nabisco, Inc. v. PF Brands, Inc., 50 F.Supp.2d 188, 199 (S.D.N.Y. 1999).

### i. Montblanc Skywalker Pen Trade Dress

Plaintiffs describe in sufficient detail the combination of elements that "together give the [Starwalker] pens a distinct overall look and commercial impression." Compl. ¶ 10. Plaintiffs also duly note that the Starwalker Trade Dress "is in no way functional," and has acquired secondary meaning with the public, which recognizes Montblanc as the "sole source and origin" of Starwalker Pens. See id. ¶ 11. Plaintiffs' allegations, including its assertion of a likelihood of confusion, suffice to state a cause of action for trade dress infringement insofar as plaintiffs claim that Colibri distributed pens that were "colorable imitations" of the

Starwalker Pens.

Not surprisingly, plaintiffs appear to have abandoned any suggestion that they have protectible trade dress rights in a line of Montblanc accessories that are ostensibly "evocative of the Starwalker Pen Design."[3] Compl. ¶ 16. Neither the complaint nor any other submission from plaintiffs contains any articulation whatsoever as to the distinctive elements that constitute the protectible trade dress of the line of accessories. See Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381-82 (2d Cir. 1997) (vacating trade dress preliminary injunction where plaintiff failed to articulate the specific distinctive features of its line of outdoor furniture). And while the Montblanc accessories are alleged to be "evocative of" the design of the Starwalker Pen, see id., most of the elements specified as the trade dress for the Starwalker Pen are simply not present in every item in the product line. Indeed, variations between the items—as diverse as cufflinks and belt buckles—appear far more than "minor." See R.F.M.A.S., 619 F.Supp.2d at 77. In fact, the only apparent commonality amongst all the depicted items is the "grid design . . . consist[ing] of small black rectangular areas with steel-colored edges . . . ." Compl. ¶¶ 10(c), 16.

A plaintiff claiming trade dress infringement as to a line of products must make efforts to fairly put the defendant on notice of the distinctive elements and features of the trade dress. See Yurman Design, 262 F.3d at 116. Generally speaking, while trade dress for artistic products may be "broadly framed," courts in this circuit look askance at descriptions of trade dress in which enumerated elements are not all present in each item within a product line. See

_____

[3] See *supra* note 2.

R.F.M.A.S., 619 F.Supp.2d at 77, 79 ("[t]he elements specified as the trade dress must be present in every item in that product line"); Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co., 292 F.Supp.2d 535, 550 n.12 (S.D.N.Y. 2003) (holding that there was no protectible trade dress for a line of winter "Snopants" where the trade dress description "would cover a broad range of pants and would be composed of commonly-used elements in the industry" assuming that inconsistent elements were removed); Elements/Jill Schwartz, Inc. v. Gloriosa Co., No. 01 Civ. 904(DLC), 2002 WL 1492197, at *5 (S.D.N.Y. July 15, 2002) (granting defendant's motion for summary judgment on Lanham Act claim where "the specific elements of the trade dress listed by the plaintiff [were] not present in all of the . . . frames and books" it was seeking to protect).

Although a Lanham Act plaintiff may rely on visual depictions of the trade dress or broader descriptions where the product line (such as a line of jewelry or accessories) "involves a higher degree of decorative or artistic elements," the plaintiff must nevertheless "point[] to the distinctive elements" that cut across the product line. See R.F.M.A.S., 619 F.Supp.2d at 78. In contrast to the plaintiff in R.F.M.A.S , plaintiffs here have not described the common characteristics of the line of accessories that evoke the Starwalker Pen. Compare id. at 78-79 (citing plaintiff's description of the "distinctive look" of the Stella line of jewelry that pointed to precise, common elements apparent in the photographs), with Compl. ¶ 16 (containing photographs but no description of distinctive elements common to the accessories). The only Starwalker trade dress description proffered by plaintiffs is specific to the Starwalker Pen, see Compl. ¶ 10, and, as noted above, the only element in common with the accessories is "a grid design consisting of small rectangular areas . . . of steel-colored edges and black background,"

Compl. ¶ 10(c) -- a description that is too generic to serve as a source-identifier. See Yurman Design, 262 F.3d at 117-18; see also Maharishi Hardy Blechman, 292 F.Supp.2d at 550 n.12 (noting that even "if the Court were to delete the elements of the trade dress which are not consistent within [the line of accessories], the remaining trade dress . . . would plainly be generic, not distinctive"); Henri Bendel, Inc. v. Sears, Roebuck & Co., 25 F.Supp.2d 198, 202 (S.D.N.Y. 1998) ("Bendel's cannot claim the exclusive right to use vertically striped, plastic coated fabric and gold zipper pulls on cosmetic bags.") (Chin, J.).

Consequently, this Court concludes that plaintiffs have alleged sufficient facts to state a claim for trade dress infringement with regard to the Starwalker Pen; they have not, however, stated a trade dress claim in connection with the line of accessories that purport to evoke the Starwalker trade dress (and plaintiffs in fact appear to have abandoned that claim).

### ii. Panerai Luminor Trade Dress

Plaintiffs have also pled a sufficiently detailed expression of the Panerai Luminor watch design and its distinctive winding crown bridge. See Compl. ¶¶ 24, 25. Although the collocation of elements described therein includes features that are no doubt essential to the watch's use or purpose—i.e., functional—the arrangement and design of those elements, such as the watch case and oversized numerals on the watch dial, can be construed as arbitrary, and thereby deserving of trademark protection. See LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 76 (2d Cir. 1985), abrogated on other grounds as stated in Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1042 (2d Cir. 1992). Moreover, because plaintiffs registered the Panerai Luminor Trade Dress and Panerai Luminor Bridge Design (see D.E. # 35-1; Compl. ¶¶ 41-42), the burden falls to defendant to prove functionality. See TrafFix

Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 29–30 (2001); accord R.F.M.A.S., 619 F.Supp.2d at 80-81.[4]  Defendant, having defaulted, made no such showing, and thus plaintiffs' claim for trade dress protection survives.  As with the Starwalker Pen, any claim for trade dress infringement is necessarily limited to allegations that defendant sold items that fall within the ambit of the properly articulated trade dress, including watches or "pocket watches" distributed by defendant that were colorable imitations of plaintiffs' designs.

### B.  Copyright Claims

Plaintiffs seek a default judgment on their claim that defendant infringed their copyrights in a line of jewelry evocative of the Starwalk Pen Design.  See 11/19/09 Pl. Letter Br. at 2, D.E. #35.  To prevail on their claim of copyright infringement, plaintiffs must allege and establish:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); accord Yurman Design, 262 F.3d at 108-09; see also Maverick Recording Co. v. Goldshteyn, No. CV-05-4523 (DGT), 2006 WL 2166870, at *2 (E.D.N.Y. July 31, 2006) (setting forth the pleading requirements for a copyright infringement claim); Jose Armando Bermudez & Co. v. Bermudez Int'l, No. 99 Civ. 9346(AGS), 2000 WL 1225792, at *10 (S.D.N.Y. Aug. 9, 2000) (same).  While a valid copyright is typically one that has been registered (or preregistered) with the U.S. Copyright Office, see Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 354 F.3d 112, 115 (2d Cir. 2003), "[n]o proof of registration is required if the work for which the plaintiff seeks protection has been authored in a foreign country

---

[4]  Where the trade dress is not registered, the plaintiff "has the burden of proving that the matter sought to be protected is not functional."  15 U.S.C. § 1125(a)(3).

covered by an applicable Convention." Jose Armando Bermudez, 2000 WL 1225792, at *10

(citing 17 U.S.C. § 411(a)); accord Sadhu Singh Hamdad Trust v. Ajit Newspaper Adver.,

Mktg. & Commc'ns, Inc., 503 F.Supp.2d 577, 584 (E.D.N.Y. 2007).

Plaintiffs -- who do not have U.S. copyright registrations for their product designs --

have not sufficiently pled a cause of action for copyright infringement. Plaintiffs allege they

own copyrights in both the Starwalker Pen and its accessories. Compl. ¶¶ 13, 17. Plaintiffs

also assert, without more, that these products were "first offered for sale outside the United

States" and that "such design[s are] not . . . U.S. works within the meaning of 17 U.S.C. §§

101 and 411[,]" and that, as a result, "no registration is required." Compl. ¶¶ 15, 19.

However, plaintiffs fail to designate the country in which the copyrights are purportedly held,

and this omission is fatal to their claim. See Piaggio & C.S.P.A. v, Scooterworks USA, Inc.,

No. 98 C 7573, 1999 WL 674749, at *5 (N.D. Ill. Aug. 23, 1999) (dismissing copyright

infringement claim without prejudice, despite plaintiff's argument that, where the complaint

alleged that defendant was an Italian company, one could reasonably infer that "the materials at

issue originated in that country and are Berne Convention works"; the court ruled that,

"[w]hile it may be true . . . that the posters at issue fall under the registration requirement

exception because they are Berne Convention works, whose country of origin is not the United

States, it is not apparent from the facts alleged in the Complaint that this is the case."); Master

Sound Int'l, Inc. v. Polygram Latino U.S., No. 98 CIV. 8468 (DLC), 1999 WL 269958, at *2

(S.D.N.Y. May 4, 1999) (even though one could reasonably infer from the complaint and

plaintiff's affidavits that the allegedly infringed works originated in Mexico, a signatory to the

Berne Convention, plaintiff failed to state a claim for copyright infringement where the

complaint did not "identify the specific works at issue and their individual registration information to establish [plaintiff's] ownership of a valid copyright under Mexican law."); see also Master Sound Int'l v. Polygram Latino U.S., No. 98 Civ. 8468(DLC), 1999 WL 595661, at *2 (S.D.N.Y. Aug. 1999) (declining to dismiss third amended complaint, which averred "that all six compositions are protected under Mexican law and identifie[d] which compositions are at issue.").

As plaintiffs have not identified the country of origin for any of the allegedly infringed products, the Court cannot determine whether that "foreign country" is a signatory to an applicable convention (such as the Berne Convention), so as to satisfy the exception to the U.S. registration requirement.[5] Accordingly, the allegations contained in plaintiffs' claim for copyright infringement are insufficient to establish liability.[6]

---

[5] While Montblanc has its principal place of business in Germany (a Berne signatory), here, as in Piaggio, plaintiffs have not alleged that the infringed products originated in Germany and are Berne Convention works. Compare Complaint in Entral Group Int'l v. Sun Sports Bar Inc., No. 05-CV-4836 (CBA), 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007), ECF docket entry #1 (complaint alleged, in paragraph 13, that "[t]he works were created in Hong Kong and are protected under the copyright laws of the United Kingdom, The People's Republic of China, the Berne Convention, and the United States."). Absent supporting facts, the Court is not obliged to accept as true plaintiffs' mere legal conclusion that no registration is required, particularly in the wake of the Supreme Court's decision in Iqbal, 129 S.Ct. at 1949.

[6] Even if plaintiffs had met their burden with respect to the copyright ownership element of their copyright claim, this Court has serious doubts as to whether they satisfied the infringement element of that claim. "To establish infringement, the copyright owner must demonstrate that (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Yurman Design, 262 F.3d at 110 (quotation and citation omitted). The only facts pled or otherwise proffered by plaintiffs as to defendant's acts of copyright infringement consist of the following conclusory assertion: defendant "manufactured, sold, offered for sale and distributed pens, pocket watches and other

(continued…)

## III. Permanent Injunction

In light of defendant's mandated receivership, plaintiffs do not seek monetary damages, but instead seek to permanently enjoin defendant from engaging in any of a series of commercial activities that relate to "any product bearing the STARWALKER TRADE DRESS or the PANERAI LUMINOR Trade Dress, or any trade dress similar thereto or any trade dress or design likely to cause confusion or mistake or to deceive as to the source or sponsorship of such item." Pl. Mot. for Entry of Default., Ex. 1 (Proposed Default Judgment) ¶ 2(a), D.E. #33-1. Under the Lanham Act, 15 U.S.C. § 116, a plaintiff seeking a permanent injunction must satisfy the four-factor test enunciated by the Supreme Court in <u>eBay, Inc. v. MercExchange, LLC</u>, 547 U.S. 388, 390 (2006); i.e., plaintiff must show that: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) the

---

[6](...continued)
accessories each bearing one or more of the . . . copyrighted designs identified hereinabove, or a colorable imitation thereof." Compl. ¶ 33; <u>see also</u> <u>id.</u> ¶¶ 34-35 (claiming that defendant acted willfully and in bad faith, without a license or authorization). Plaintiffs have offered no photographs of the allegedly infringing products, to enable the Court to make a visual comparison of the goods. In other words, plaintiffs' infringement allegations contain only legal conclusions, devoid of any supporting facts. <u>See Broughel v. Battery Conservancy</u>, No. 07-CV-7755 (GBO), 2009 WL 928280, at *4 (S.D.N.Y. Mar. 30, 2009) ("[I]t is axiomatic that plaintiff's claims cannot rest on inchoate and conclusory accusations of unauthorized copying. Rather, in articulating her cause of action, plaintiff must identify, with specificity, the original works that are the subject of her copyright claim and which acts committed by defendants constitute infringement of her rights.") (citing <u>Kelly v. L.L. Cool J.</u>, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), <u>aff'd</u>, 23 F.3d 398 (2d Cir. 1994)); <u>see also</u> <u>Maverick Recording</u>, 2006 WL 2166870, at *2 ("Rule 8(a) requires that plaintiffs set out the 'particular infringing acts . . . with some specificity.' . . . [A] complaint must provide more than conclusory allegations of copyright infringement to withstand dismissal.") (citing <u>Marvullo v. Gruner & Jahr</u>, 105 F.Supp.2d 225, 228, 230 (S.D.N.Y. 2000)).

public's interest would not be disserved by a permanent injunction. See Microsoft Corp. v. Atek 3000 Computer Inc., No. 06-CV-6403 (SLT)(SMG), 2008 WL 2884761, at *5 (E.D.N.Y. July 23, 2008) (citing eBay); see also Gayle Martz, Inc. v. Sherpa Pet Group, LLC, 651 F.Supp.2d 72, 85 (S.D.N.Y. 2009). Plaintiffs here have met their burden, at least to the extent described below.

The first factor—irreparable injury—"is automatically satisfied by actual success on the merits as irreparable harm is established by a showing of likelihood of confusion." Dunkin' Donuts Franchised Rests. LLC v. Tim & Tab Donuts, Inc., No. 07-CV-3662 (KAM)(MDG), 2009 WL 2997382, at *8 (E.D.N.Y. Sept. 15, 2009) (internal quotation and citation omitted); Atek 3000, 2008 WL 2884761, at *5. Defendant's default constitutes an admission of liability as to plaintiffs' trade dress infringement for pens and watches that are confusingly similar to the Starwalker and Panerai Luminor trade dresses, respectively. See supra pp. 10–12, 14-15. Therefore, as to those products, plaintiffs have shown a likelihood of confusion from which irreparable injury is presumed. See id.[7]

The second eBay factor—"no adequate remedy at law"—is satisfied where the record contains no assurance against defendant's continued violation of plaintiffs' trade dress. See Atek 3000, 2008 WL 2884761, at *5. In determining whether such an assurance exists, in this case, the Court may consider defendant's default, particularly insofar as it suggests that defendant may continue its infringing behavior. See Warner Bros. Entm't, Inc. v. Carsagno,

---

[7] Although defendant has reportedly ceased operation, it appears that defendant continues to offer merchandise for sale over the internet. See Colibri, http://www.colibri.com (last visited Jan. 19, 2010). Consequently, "there is no reason to conclude that defendant has or will cease its infringing acts . . . ." See Atek 3000, 2008 WL 2884761, at *5.

No. 06 CV 2676 (NG)(RLM), 2007 WL 1655666, at *5 (E.D.N.Y. June 4, 2007) (citing Sony

Home Pictures Entm't, Inc. v. Chetney, No. 5:06-CV-227 (FJS)(GJD), 2007 WL 655772, at

*4 (N.D.N.Y. Feb. 26, 2007)).  Indeed, the need for permanent injunction is bolstered by the

fact that defendant's default is deemed an admission of willfulness.  See Chetney, 2007 WL

655772,  at *4 ("by reason of her default, Defendant has admitted that she willfully infringed

Plaintiffs' copyrights and there is nothing in the record to suggest that Defendant would not

continue to violate Plaintiffs' copyrights").  To be sure, defendant's receiver notified the Court

that Colibri closed down, let its employees go, and is currently in the process of liquidating

assets and "winding down."  See 2/6/09 Receiver's Letter, D.E. # 26.  Nevertheless, the

receiver made no representation to the Court regarding the distribution of corporate assets (and

any infringing products) to any successors of Colibri.  Therefore, plaintiffs currently have no

adequate remedy at law against future infringement.[8]

Finally, plaintiffs satisfy the remaining two factors of the eBay test, requiring a

balancing of hardships and the public interest.  First, defendant's default tips the balance of

hardships squarely toward plaintiffs, who "stand[] to lose goodwill and sales" should the now

absentee defendant or its successors in interest endeavor to violate plaintiffs' trade dress

protections in the future.  See Atek 3000, 2008 WL 2884761, at *5.  Second, "the public

interest would not be disserved by a permanent injunction, as there is greater public benefit in

securing the integrity" of plaintiffs' trade dress than in permitting defendant to infringe those

interests and cause consumer confusion.  See Carsagno, 2007 WL 1655666, at *6 (internal

---

[8] See supra note 7.

citations and quotations omitted); <u>see also</u> <u>Atek 3000</u>, 2008 WL 2884761, at *5.

Accordingly, as plaintiffs have established their entitlement to injunctive relief, this Court recommends that a permanent injunction be granted in a form similar to that proposed by plaintiffs, enjoining defendant and any successors in interest from infringing plaintiffs' trade dress, but limiting such injunction to those products that properly fall within the descriptions of the Starwalker Pen and Panerai Luminor trade dress designs as described above.

## CONCLUSION

For the foregoing reasons, it is the recommendation of this Court that plaintiffs' motion for default judgments be granted in part and denied in part, and that defendant and its successors in interest be enjoined from future infringements of plaintiffs' trade dress designs for the Starwalker Pen and the Panerai Luminor watches.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Judge Kiyo A. Matsumoto on or before February 2, 2010. Failure to file objections in a timely manner may waive a right to appeal the District Court order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED**

**Dated:**      **Brooklyn, New York**
             **January 19, 2010**


                    **ROANNE L. MANN**
                    **UNITED STATES MAGISTRATE JUDGE**